---

GOLL v. UNITED STATES

(United States Circuit Court of Appeals, Seventh Circuit. January 2, 1907.)

No. 1,295.

1. COURTS—JURISDICTION OF FEDERAL COURTS—SPECIAL TERM OF DISTRICT COURT—CRIMINAL JURISDICTION.

Under Rev. St. § 581 [U. S. Comp. St. 1901, p. 477], which provides that special terms of any District Court may be ordered by the district judge, and that "any business may be transacted at such special term which might be transacted at a regular term," a district court has jurisdiction at a special term to try a defendant on an indictment returned at a

previous regular term, and it is not necessary that the order for the special term be incorporated in the record of the case to show such jurisdiction.

**2.** BANKS AND BANKING—PROSECUTION FOR FALSIFYING BOOKS OF NATIONAL BANK—EVIDENCE.

On the trial of a defendant charged as an officer or agent of a national bank, under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], with having made false entries in its books in the accounts showing the indebtedness to it of other banks, periodical statements taken from the bank's files and purporting to have been rendered to it by such other banks, and which are shown to have been under the defendant's charge, are admissible in evidence, and they may also be identified by employés of such other banks as having been made under their direction and duly sent by them, and their correctness verified by reference to the books of such banks, which are in evidence and used in connection with such books for convenience of reference, as evidence of the true state of the account between the two banks.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 975.]

**3.** SAME—INSTRUCTIONS.

Instructions given and refused on the trial of a defendant charged as an officer of a national bank, under Rev. St. § 5209 [U. S. Comp. St. 1901, p. 3497], with misappropriation of its funds and with making false entries in its books considered, and the charge as given *held* correct and to cover fairly such of the requested instructions refused as were proper and applicable to the evidence.

**4.** CRIMINAL LAW—REVIEW IN APPELLATE COURT—HARMLESS ERROR.

Where a defendant in a criminal case is convicted on a number of counts and given concurrent sentences, none of which exceeds the limit which might be imposed on any one count, an error in the admission of evidence or in the instructions relating to one or more of the counts, but not to all, is harmless.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §§ 3143, 3161.]

In Error to the District Court of the United States for the Eastern District of Wisconsin.

The plaintiff in error was convicted of several offenses, charged under section 5209 of the Revised Statutes [U. S. Comp. St. 1901, p. 3497], in 19 several counts of the indictment, and was sentenced thereupon to an imprisonment for 10 years, such sentence and judgment to "be concurrent, and not cumulative." Reversal of the judgment is sought upon numerous assignments of error, many of which are plainly without merit and are not referred to in the brief or argument at the bar. The assignments which appear to be relied upon are sufficiently mentioned and discussed in the opinion.

The indictment as filed consisted of a number of counts which were nolled. Several counts charging embezzlement and several for misapplication of bank funds were in the case as submitted to the jury, but were excluded from the verdict, so that acquittal resulted thereunder. Of the 19 counts upon which the verdict found the accused guilty, each charged an offense committed as "cashier, assistant cashier and clerk" of a national banking association, known as the "First National Bank of Milwaukee," respecting the funds or credits of such bank. Four of these counts (3, 5, 20, 26) aver that he willfully misapplied the funds of the bank, with intent to defraud. Fourteen of them (4, 9, 17, 18, 22, 27, 28, 30, 31, 32, 33, 34, 35) aver that he unlawfully caused false entries to be made in the books of the bank, with intent to defraud and deceive. The remaining count (19) named in the verdict avers the unlawful making and drawing of a bill of exchange, without authority and with intent to defraud.

Of the first-mentioned counts for misapplication of funds, No. 3 reads as follows: "And the grand jurors, aforesaid, upon their oath, aforesaid, do further present: That one Henry G. Goll, late of the said Eastern District of

Wisconsin, on the 7th day of December, A. D. 1904, at the city of Milwaukee in said district, was then and there the cashier, assistant cashier, clerk, and agent of a certain national banking association, the First National Bank of Milwaukee, theretofore duly organized, established, and then and there existing and doing business in the city of Milwaukee, county of Milwaukee, in said district, under the laws of the United States; and that on the said 7th day of December, A. D. 1904, at said city of Milwaukee in said district, the said Henry G. Goll, by virtue of his said office as said cashier, assistant cashier, clerk, and agent, and while he was employed therein, as aforesaid, had in his possession and under his control in said bank certain moneys of the said banking association, to a large amount and of great value, to the grand jury unknown, but exceeding the sum of twenty thousand dollars, then and there being; the particular kinds and descriptions of which last-named money the grand jurors aforesaid have no means of knowing, and therefore cannot set forth; that on the said 7th day of December, A. D. 1904, the said Henry G. Goll, at the city of Milwaukee, in said district, and within the jurisdiction of this court, and as such officer of such First National Bank of Milwaukee, and so, having in his possession the moneys aforesaid, did knowingly, willfully, unlawfully, and feloniously, and with intent to injure and defraud the said banking association, and Fred Vogel, Jr., Charles Pfister, George P. Miller, and divers other persons whose names are to the grand jurors unknown, then shareholders of said banking association, namely, the First National Bank of Milwaukee, transfer and pay over, and cause to be transferred and paid over, to one Gordon Bigelow, late of the said Eastern District of Wisconsin, from and out of the moneys of the said banking association, the First National Bank of Milwaukee, then and there so in his control as aforesaid, the sum of twenty thousand dollars, for the personal use and benefit then and there of the said Gordon Bigelow, and the same not then and there being in any wise a debt or obligation of the said First National Bank of Milwaukee, and in no wise for the purposes, uses, and benefit of the said banking association, and no wise in the regular course of business of said bank, and without any consideration whatever therefor passing to the said banking association, and the same being so paid without any authority whatsoever therefor from the board of directors, and without any proper authority, and the said Gordon Bigelow being then and there in no wise entitled to such payment, and the same being in no wise made on account of any debt, obligation, or liability of said First National Bank whatsoever; and that thereby the said Henry G. Goll, as such cashier, assistant cashier, clerk, and agent aforesaid, then and there, to wit, on the said 7th day of December, A. D. 1904, at the city of Milwaukee, in said district, by means of the payment aforesaid, in manner and form aforesaid, did willfully, wrongfully, and feloniously misapply the said sum of twenty thousand dollars of the moneys of the said First National Bank of Milwaukee, with intent then and there on the part of him, the said Henry G. Goll, to injure and defraud the said banking association, and Fred Vogel, Jr., Charles Pfister, George P. Miller, and divers other persons whose names are to the grand jury unknown, then shareholders of said banking association, namely, the First National Bank of Milwaukee, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

Count No. 4, for the making of false entries, reads as follows: "And the grand jurors, aforesaid, upon their oath aforesaid, do further present: That Henry G. Goll, late of said district, on the 8th day of December, A. D. 1904, at said district being then and there the cashier, assistant cashier, and clerk of a certain national banking association, then and there known and designated as the 'First National Bank of Milwaukee,' which said association had been theretofore created and organized under the laws of the United States, and then and there existing and doing a banking business in the city of Milwaukee, and county of Milwaukee, in said district, under the said laws of the United States, did knowingly and unlawfully make and cause to be made in a certain book then and there belonging to, and in use by, the said banking association in transacting its said banking business, and then and there designated and known as 'General Ledger No. 18—1904,' and upon page 388 thereof, under the page heading, "Security Bank of Minnesota, Minneapolis,' the same being one of the

pages in, and a part of the account of a certain banking association of Minneapolis, Minnesota, doing business under the name of Security Bank of Minnesota, Minneapolis, and in column headed 'Dr.' a certain entry of said date in figures as follows, to wit: '10,000,' and which said entry, so as aforesaid made in said book, then and there purported to show, and did in substance and effect indicate and declare that the said First National Bank of Milwaukee had then paid to, for, and upon the account of the said Security Bank of Minnesota, Minneapolis, the sum of ten thousand dollars, with which the account of said Security Bank of Minnesota, Minneapolis, with the First National Bank of Milwaukee should be then and there charged. And the grand jurors, aforesaid, upon their oath, aforesaid, do further say: That the said entry, so made as aforesaid, was then and there, false in this, namely: That neither moneys, funds, or credits, nor collectively such, in the sum of ten thousand dollars, nor approximately such amount, had been then paid by the said First National Bank of Milwaukee to, for, or upon account of the said Security Bank of Minnesota, Minneapolis, with which the account of said Security Bank of Minnesota, Minneapolis, with the First National Bank of Milwaukee, should be then or there charged, as he, the said Henry G. Goll, then and there well knew; and that the said false entry was then and there made and caused to be made by the said Henry G. Goll, he then being then and there such cashier, assistant cashier, and clerk, as aforesaid, with the intent then and there on the part of him, the said Henry G. Goll, to deceive the other officers of the association, to this grand jury unknown, and to deceive any agent who might be thereafter appointed by the Comptroller of the Currency to examine the affairs of said association, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

Count No. 19, for drawing a false bill of exchange, is as follows: "And the grand jurors aforesaid, upon their oath aforesaid, do further present: That on the 17th day of September, A. D. 1904, Henry G. Goll, late of the city of Milwaukee, in said district, was then and there cashier, assistant cashier, clerk, and agent of a certain national banking association, to wit, the First National Bank of Milwaukee, in the state of Wisconsin, in said district, theretofore duly organized and established, and then existing and doing business at the city of Milwaukee, county of Milwaukee, in the district and state aforesaid, under the laws of the United States; and that the said Henry G. Goll, on the said 17th day of September, A. D 1904, at the city of Milwaukee, in said district, and within the jurisdiction of this court, did then and there, as being such cashier, assistant cashier, clerk, and agent of such banking association, then and there with intent to injure and defraud the said banking association and Fred Vogel, Jr., Charles Pfister, George P. Miller, and divers other persons whose names are to the grand jury unknown then shareholders of said banking association, knowingly, unlawfully, and feloniously draw, and cause to be drawn, a certain cashier's check and bill of exchange of said banking association without authority from the directors of said association, and without any proper authority whatsoever; that is to say, a certain cashier's check and bill of exchange of the said banking association, bearing date September 17, 1904, and numbered 2,683, upon the said First National Bank of Milwaukee, for the sum of twenty thousand dollars ($20,000) and payable to the order of the Milwaukee National Bank, the same being then and there a banking association doing business in the said city of Milwaukee, and such cashier's check and bill of exchange aforesaid being then and there signed, 'Henry G. Goll, Asst. Cash.' That the aforesaid cashier's check and bill of exchange was not so drawn, as aforesaid, for the use, benefit, interest, or any purpose of said First National Bank of Milwaukee whatsoever, and was in no wise drawn in the course of business of said First National Bank of Milwaukee, and was in no wise drawn, as aforesaid, on account of any debt, obligation, or liability of said First National Bank of Milwaukee, and was so drawn, as aforesaid, by the said Henry G. Goll, as such cashier, assistant cashier, clerk, and agent, without any consideration whatever therefor paid, or passing to said First National Bank of Milwaukee, as he, the said Henry G. Goll, then and there well knew, and was so drawn by him, as aforesaid, knowingly, for the purpose of fraudulently, feloniously, willfully, and unlawfully misapplying, and causing to be misap-

plied; the moneys of the said First National Bank of Milwaukee for the personal debt, use, and benefit of some person, or persons other than the said First National Bank of Milwaukee, to the grand jury unknown, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

Such circumstances in evidence as are deemed material for the purposes of review are stated in the opinion.

Aaron Heims and W. B. Rubin, for plaintiff in error.
H. K. Butterfield, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge, after stating the facts, delivered the opinion of the court.

The bill of exceptions discloses, in substance, that the evidence was voluminous and tended to establish all the offenses charged in the several counts upon which the plaintiff in error was convicted. Certain deductions from the evidence are stated, without stating the specific testimony, except on the part of four witnesses introduced for the prosecution, namely, Bird, a bookkeeper of the bank; Van Dyke, a bookkeeper of National City Bank, New York; Dean, a bookkeeper of National Bank of Commerce, St. Louis, and Lewis, a bookkeeper of Security Bank of Minnesota, Minneapolis—each in reference to transactions involved under one or the other count. These facts appear, however, and are undisputed: That defalcations in the funds of the First National Bank of Milwaukee "amounted to about $1,500,000," which were primarily chargeable to Frank G. Bigelow, the president of the bank; that the plaintiff in error was the assistant cashier, having charge of the entries, accounts with other banks, and transactions involved under the various counts in question, which entered into such defalcations; that he made and directed false entries in the books of the bank, and charged and falsified the statements of account with other banks, tending to cover up and accomplish the defalcations, to the extent averred in the counts, respectively. The active participation of the plaintiff in error in each of the transactions charged is not only established, but undenied; and the bill of exceptions states, in effect, that the evidence tended to establish his knowledge of each misapplication and falsification so charged and his fraudulent intent. This evidence is met only by the testimony on the part of the accused that he acted under the direction of Bigelow, the president, "and without any knowledge of their wrongful nature"; and in reference to various transactions of false entries, credits, or drafts in favor of one Gordon Bigelow, that all were under such direction and made by him in good faith. That the evidence was strongly indicative of a practice on the part of the accused in misapplying the funds of the bank and making false entries to conceal such frauds cannot be doubted under the recitals of the proof.

Upon the sufficiency of the evidence to support the verdict against the plaintiff in error, under each of the 19 counts named therein, no question arises. The objections which are pressed for reversal are (1) want of jurisdiction for trial at the term designated; (2) alleged errors in permitting certain witnesses "to testify to the correctness of state-

ments of account prepared by other persons"; (3) alleged errors in refusing instructions requested on behalf of the accused.

1. The challenge of jurisdiction is plainly untenable. The objection raised below was that, the indictment having been returned at a "regular term," the court was without jurisdiction to summon a jury for trial at a "special term," or "to try a criminal cause at any special term." Section 581, Rev. St. U. S. [U. S. Comp. St. 1901, p. 477], expressly provides that special terms of District Courts may be ordered by the district judge, "and any business may be transacted at such special term which might be transacted at a regular term." The act of 1870 (Act June 30, 1870, c. 175, 16 Stat. 171), creating the present judicial districts of Wisconsin, alike provides that the "Circuit Court or District Court" for either district may "order special terms, and order a grand or petit jury, or both," and "at such special terms shall have all the powers that they have at a regular term appointed by law." Either provision clearly meets the objection which assumes the term to be special, with no challenge of the assumed order therefor. The further contention for reversal, because no order for a special term was incorporated in the present record, is without force, as there was no call for or reference to it in the trial court.

2. The objections to the testimony of Van Dyke, Dean and Lewis, who were bookkeepers, respectively, of banks sending the periodical statements of account in question to the First National Bank of Milwaukee, appear to rest on a misconception, as we believe, of the rules of evidence applicable to such cases. The statements were produced from the files of the above-named bank, as sent from the respective correspondent banks. Each witness identified the statement as made by his bank and under his direction, when forwarded in due course; and upon reference to the original books of entry—which were in court and introduced in evidence—verified their correctness. Such testimony was admissible, within the rule upheld by this court in Brown v. United States, 142 Fed. 1, 5, 73 C. C. A. 187, and authorities there cited. The statements were in most, if not all, instances, traced to the possession and manipulation of the plaintiff in error—while all were within his charge—and identification alone was sufficient for introduction in that aspect of the case. For all other purposes they were admissible for convenience in reference to and connection with the books of account, which were in evidence with no objection raised; were not conclusive of the correctness of any item therein, but open to examination and verification on reference to the books in evidence. We are satisfied that no error was committed in the reception either of the testimony of these witnesses or of the statements referred to.

3. The alleged errors for denial of several instructions requested on behalf of the accused are more difficult of solution, as the issues were complicated and the instructions to the jury were necessarily extended to cover the various phases of fact and intent. The trial was protracted, requiring a complete chain of proof under each of the counts submitted to the jury, and instructions thereupon to govern the jury in just consideration of each element so introduced, under the strict rule of burden upon the prosecution to establish both commission of the act charged and criminal intent therein for conviction. In this view, ex-

151 F.—27

amination of the full instructions which were given impresses us with their general fairness and clear definition of the above-mentioned rule, so reiterated under the various phases of the inquiry, that no room appears for misunderstanding the requirement of proof beyond reasonable doubt, not only of the fact that the frauds and misapplication of funds charged were committed by the plaintiff in error, but that the fraudulent purpose was understood and intended by him.

On behalf of the plaintiff in error numerous paragraphs of instructions were requested, many of which were given in the language of the request, while others were given with needful qualifications. Others were plainly unauthorized, and complaint is not urged for their rejection. The following are the instructions requested and not given in the language of the request, upon which error is assigned:

"(a) If the jury find, upon a careful consideration of the evidence, that it fails to show any motive on the part of the accused to commit any one of the crimes charged against him, this is a circumstance which the jury may consider in connection with all the other evidence in the case in making up their verdict.

"(b) Before the jury can convict the defendant upon any count of the indictment in this case, it must appear from the evidence, beyond a reasonable doubt, that the defendant, and not some one else, committed the offenses charged in the indictment, or in one or more counts of the indictment.

"(c) If any one of the jury, after having considered all the evidence in this case and after having consulted his fellow jurymen, should entertain a reasonable doubt of the defendant's guilt, then the jury cannot find the defendant guilty.

"(d) Unless each of you is convinced beyond a reasonable doubt of the guilt of the defendant of the offenses charged in some one or more counts of the indictment from the evidence in the case, then you should not convict him.

"(e) The court charges the jury that each juryman must separately be satisfied, beyond a reasonable doubt and to a moral certainty, that the defendant committed one or more of the offenses charged in the indictment before they can find the defendant guilty.

"(f) If you believe from the evidence that the defendant was informed by the president of the First National Bank of Milwaukee that arrangements had been made by Gordon Bigelow by which he, Gordon Bigelow, was to be given credit for a larger amount than appeared on the credit side of his account, up to a certain amount, and that, under such circumstances, defendant made the entries of such credits in good faith, and in the belief of his right to do so, such entries were not false entries within the meaning of the statute, and he was not guilty of a violation thereof, in making them.

"(g) If you believe from the evidence that defendant was informed by the president of the First National Bank of Milwaukee that arrangements had been made by which he was to be given credit for a larger amount than appeared on the credit side of his account, up to a certain amount, then, if under such circumstances defendant made entries of such credits in good faith, and in the belief of his right to do so, they were not false entries within the meaning of the statute, and he was not guilty of a violation thereof, in making them.

"(h) If you find that some or all of the acts with which defendant is charged in the indictment in this case were done honestly and without any intent to defraud, although done without a proper exercise of judgment and discretion, then as to such acts you will find him not guilty.

"(i) The burden of proof in this case is upon the United States, and continues throughout the case until the United States has shown by the evidence, to the exclusion of a reasonable doubt, that the defendant is guilty.

"(j) The prosecution is bound to make out the offense as charged, both as to the falsity of the entries and the intent with which they were made, beyond a reasonable doubt; and, if the proof leaves a reasonable doubt upon your

minds, either as to the falsity of the entries or as to the defendant's fraudulent or criminal intent in making them, he is entitled to a verdict of acquittal at your hands.

"(k) Burden of proof throughout the trial is upon the United States. All the presumptions of law, independent of the evidence, are in favor of innocence, and every person is presumed to be innocent until he is proved guilty. If upon such proof there be reasonable doubt remaining, the accused is entitled to the benefit of it by an acquittal; for it is not enough to establish a probability, arising from doctrine of chances, that the fact charged is more likely to be true than the contrary, but the evidence must establish the truth of the fact to a reasonable and moral certainty, a certainty that convinces the understanding and satisfies the reason and judgment of those who are bound to act conscientiously upon it."

While the various propositions thus requested were withheld from submission in the terms selected by counsel, the fair import of each was clearly incorporated in the instructions, in so far as applicable to the case. These references and remarks upon them are deemed sufficient: The inquiry of motive (request "a") was not involved under either count, with the acts of the accused not only established, but confessed; and the inquiry of knowledge and intent was not dependent upon motive. As previously mentioned, the jury were instructed that the proof must establish commission of the offense by the accused beyond reasonable doubt, and the further words requested, "and not some one else" (request "b"), were neither needful nor applicable under the testimony. The instructions were that the jurors must be convinced beyond reasonable doubt, and that "a juror in a criminal case ought not to condemn unless the evidence excludes from his mind all reasonable doubt." So the complaints for denial of requests "c," "d," and "e" are unfounded, in any view of either proposition as a charge to the jury.

In reference to the testimony of the plaintiff in error that he acted under directions of the president of the bank, and in good faith, in all the matters charged, the jury were instructed, in substance, that irregularities, unless they amount to willful misapplication or acts in good faith, do not subject the officer to criminal liability; also, that directions of the president would not shield him in the commission of frauds upon the bank "if he had just reason to know that such transactions were in fact fraudulent"; also, they were reminded of the contention of the accused "that he was not aware of the fraudulent character of the transactions," and were "to consider that and weigh it for what it was worth." While the converse propositions were not directly given, under requests "f" and "g," as to directions of the president observed in good faith, we are not satisfied that either was needful in view of the repeated cautions in the charge of the court thereupon. Assuming, however, that the plaintiff in error was entitled to such specific instruction when requested, and that the refusal was erroneous, the requests are limited to the subject of extending credits to Gordon Bigelow and to Frank G. Bigelow, and are not applicable to the 14 counts for false entries included in the verdict. As the judgment is concurrent upon all counts, the error thus assumed would not be prejudicial as to such counts and cannot affect the judgment. Brown v. United States, 142 Fed. 1, 7, 73 C. C. A. 187, and cases cited.

The request marked "h" was covered by the instruction above men-

tioned; and requests "i," "j," and "k," as to the burden of proof, were completely met by the repeated instructions on that behalf.

Error is assigned for omission of the court to give an instruction requested in these words:

"The law not only presumes that every person is innocent until he is proved to be guilty, but the law also presumes that a person has a good character and reputation for honesty."

It is stated, however, in the bill of exceptions, that this request was marked (with others) by the court to be given; that all so accepted and marked were handed to defendant's counsel before delivering the charge, requesting that they call the attention of the court thereto in case either was omitted; that the above-mentioned request was inadvertently omitted; and that counsel for defendant, "being occupied in making notes" of the charge, "did not call the attention of the court to such omission until after verdict." If the instruction were proper or material in any sense, error is not well assigned for the omission, as no timely exception was preserved, even if the request were not, in effect, withdrawn.

Upon consideration of the record and each of the various assignments, we are of opinion that no reversible error appears. Other assignments than those specifically mentioned may justly be passed over without comment; and the judgment of the District Court is affirmed.